FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 09, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| WENDY FARRIS, | |
| Plaintiff, | No. 2:20-CV-00290-SAB |
| v. | |
| LOREN CULP, REPUBLIC POLICE | **ORDER GRANTING** |
| DEPARTMENT, CHRISTINE CLARK, | **DEFENDANTS' MOTIONS FOR** |
| FERRY COUNTY SHERIFF, | **SUMMARY JUDGMENT** |
| Defendant. | |

Before the Court are Defendant Ferry County and Christine Clark's Motion for Summary Judgment, ECF No. 28, and Defendants Loren Culp and Republic Police Department's Motion for Summary Judgment, ECF No. 35. The motions were considered without oral argument. Plaintiff is appearing pro se and did not respond to the motions. Michael McFarland represents Ferry County and Christine Clark. Defendants Loren Culp and Republic Police Department ("the City") are represented by Jerry J. Moberg and Mary Rathbone. Having reviewed the record and applicable caselaw, the Court grants Defendants' motions.

### Facts

This action stems from an incident on August 18, 2018, in which Plaintiff claims she was wrongly arrested and prosecuted for being in control of a vehicle

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 1**

while under the influence, resulting in her incarceration for two days, suspension of driving privileges, and other damages. ECF No. 15.

The following facts are drawn from Defendants' statements of facts, ECF Nos. 29, 36.[12]

On Saturday, August 18, 2018, former Ferry County Sheriff's Office Deputy Christine Clark received a call from dispatch at approximately 9:27 a.m. advising her there had been a report of a female driver slumped over in a small, red car at the junction of Highway 20 and Highway 21 in the city of Republic, Washington. At that time, Deputy Clark had served as a law enforcement for one and a half years and her training included Basic Law Enforcement Academy. ECF No. 30-6 at 3. Deputy Clark arrived at the scene and observed a vehicle parked on an incline at an angle off of Highway 20. Deputy Clark activated her vehicle's emergency lights and walked up to the vehicle. Deputy Clark observed a female in the driver's seat breathing slowly while slumped over to the right side of the vehicle with no support for the upper part of her body. Deputy Clark asked dispatch to send emergency response services (EMS). The occupant of the car was later identified as Plaintiff, Wendy Farris.

---

[1] The City's Statement of Facts, ECF No. 36, violate Eastern District of Washington Local Civil Rule 56(c)(1), which requires that each fact "cite to the specific page or paragraph of the record where the fact is found (e.g., affidavit p. 3, deposition p. 3, line 6, etc.)." LCivR 56(c)(1). However, the City relies entirely on a single three-page declaration for support. *See* ECF No. 37. As the source of each alleged fact is easily identifiable, the Court accepts the noncompliant filing.

[2] Plaintiff did not oppose Defendants' motions or separately address Defendants' assertions of fact as required by LCivR 56(c). As such, the Court may consider defendants' facts undisputed for purposes of these motions. *See* LCivR 56(e); Fed. R. Civ. P. 56(e)(2).

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 2**

Deputy Clark knocked on the driver's side window in an attempt to wake Ms. Farris. Ms. Farris did not wake. Deputy Clark knocked a second time and Ms. Farris woke up. Deputy Clark asked Ms. Farris to open the window. Ms. Farris began looking around inside her vehicle. Deputy Clark then asked Ms. Farris to open the door. Ms. Farris had trouble opening the door, so Deputy Clark assisted.

Ms. Farris asked where she was. Deputy Clark told her that she was in Republic, Washington, and asked Ms. Farris where she was going. Ms. Farris initially responded that she did not know, then said she was going to Oregon. Deputy Clark observed that Ms. Farris' speech was slow, and her responses took several seconds each time. Deputy Clark also observed that Ms. Farris had pinpoint pupils. Deputy Clark asked Ms. Farris if she had consumed any drugs or alcohol and Ms. Farris said that she had not.

Deputy Clark asked Ms. Farris if she would step out of her vehicle so that EMS could evaluate her when they arrived. Ms. Farris picked up a cell phone charger with her right hand, looked at it for a few seconds, and then put it down. She then started to look in a paper bag located in the passenger seat. Deputy Clark repeated her request for Ms. Farris to step out of the vehicle. Ms. Farris stepped out and Deputy Clark patted her down. Ms. Farris asked Deputy Clark if everyone got patted down with others watching. Deputy Clark walked Ms. Farris to the other side of her vehicle and completed the pat down.

Deputy Clark asked Ms. Farris why she was in town. Ms. Farris stated that she was dropping off a friend and then asked Deputy Clark why she had called EMS. Deputy Clark responded that she was worried about Ms. Farris because she seemed confused. Deputy Clark asked Ms. Farris if she had a history of drug or alcohol use. Ms. Farris stated that she did not.

Ferry County EMTs Brian Dreyer and Luis Trimm arrived on scene along with Ferry County Task Director Phillip Starr. EMS obtained and charted Ms. Farris' vitals. ECF No. 30-3 at 4. Ms. Farris asked EMS if it was their job to harass

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 3**

people and told them that it seemed to be a waste of taxpayer money. Ms. Farris refused medical treatment and transport. ECF No. 30-2 at 2. Ms. Farris asked EMS to "standby as witnesses" until Deputy Clark was done. EMS officers stayed at the scene per Ms. Farris' request. ECF No. 30-3 at 4.

The EMS incident report described Ms. Farris' mental status as "confused, event oriented, person oriented, place oriented, time oriented." ECF No. 30-3 at 3. It reported both pupils as "non-reactive." *Id.* It also noted that Ms. Farris had a "sluggish reaction to light" and "exhibited difficulty balancing." ECF No. 30-3 at 3-4. In the report, the primary impression was "altered mental status" and the secondary impression was "[s]ubstance abuse." ECF No. 30-3 at 3. It noted that Ms. Farris asked if EMS could conduct a blood alcohol test for her at the scene and EMS informed her that it was not within the scope of practice. ECF No. 30-3 at 4.

Deputy Clark asked Ms. Farris if she would perform voluntary Field Sobriety Testing and she agreed. Deputy Clark gave Ms. Farris the instruction to hold her head still and follow the tip of her pen. Ms. Farris opened one eye and then the other. Deputy Clark responded by asking Ms. Farris multiple times to keep both of her eyes open. Deputy Clark had to remind Ms. Farris several times to hold her head still and not to tilt her head in any direction.

Deputy Clark observed that Ms. Farris' pupils were equal in size, her eyes bloodshot, and her eyelids droopy. Ms. Farris also had no resting nystagmus and equal tracking. Deputy Clark observed that Ms. Farris had a lack of smooth pursuit in both eyes and distinct and sustained nystagmus at maximum deviation and prior to forty-five degrees. Ms. Farris showed six out of six scoring clues for the horizontal gaze nystagmus part of the test.

During the walk and turn portion of the test, Ms. Farris swayed back and forth while lifting her hands to balance. Ms. Farris counted the number of steps correctly but pivoted the wrong direction while yelling: "Pivoting!" On every step, Ms. Farris stepped off-line and did not touch her heel to her toe. Ms. Farris scored

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 4**

five out of eight scoring clues on the walk and turn. On the one leg stand test, Ms. Farris scored two out of four scoring clues. She swayed and was unable to keep her balance. She did not keep her lifted foot in front of her.

Deputy Clark concluded that Ms. Farris failed all of the voluntary field sobriety tests and that the behaviors shown were consistent with that of someone under the influence of drugs or alcohol. Deputy Clark placed Ms. Farris under arrest for physical control while under the influence (in violation of RCW § 46.61.504) and placed Plaintiff in Deputy Clark's vehicle.

Mr. Starr observed that Ms. Farris had difficulty maintaining her balance and appeared confused and slightly agitated. Mr. Starr also observed that Ms. Farris had a peculiar odor on her breath, but not the normal smell of alcohol.

Mr. Trimm observed that as Mr. Dreyer was taking Ms. Farris' vitals, Ms. Farris was struggling with her balance and needed to use the nearby car to balance herself. Mr. Trimm observed that during the field sobriety tests, Ms. Farris continually failed to follow directions, could not keep her balance, and was swaying from side to side.

Deputy Clark requested the assistance of Defendant Loren Culp, Chief of Police for the City of Republic, Washington. Chief Culp was the handler of a drug detection dog named Karma. They went through canine drug detection training together. Karma was assigned to Chief Culp only. Karma and Chief Culp were certified as reliable by the state of Washington as a dual-purpose canine team (narcotics and patrol). Karma was trained and certified in the detection of marijuana, heroin, methamphetamine, cocaine, and methylenedioxymethamphetamine (MDMA). Karma could detect miniscule amounts of these substances.

Upon arrival at the scene with Karma, Deputy Clark informed Chief Culp that Ms. Farris was impaired without the odor of intoxicants. Chief Culp deployed Karma on Ms. Farris' vehicle. Karma "alerted" and gave a "sit response" on the

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 5**

driver's side of Ms. Farris' vehicle. Ms. Farris' vehicle was towed to an impound yard in Republic, Washington. Chief Culp followed the tow truck and secured the car in the impound area. Chief Culp did not search the interior of the vehicle. The Republic Police Department did not have a policy or custom to cross-contaminate vehicles with the odor of a controlled substance.

Deputy Clark transported Ms. Farris to the Ferry County Jail and administered Miranda rights. Ms. Farris requested a lawyer. Deputy Clark then walked Ms. Farris into the booking section of the jail to Corrections Officer David Ruiz. Officer Ruiz booked Ms. Farris into the Ferry County Jail.

Deputy Clark spoke with Ms. Farris' lawyer on the phone. Deputy Clark asked Officer Ruiz to place Ms. Farris in the BAC room at the jail. While in the BAC room, Ms. Farris refused to answer questions until her lawyer arrived.

Deputy Clark obtained a blood search warrant for Ms. Farris. *See* ECF No. 30-7. Deputy Clark transported Ms. Farris to the Ferry County Memorial Hospital, where her blood was taken. While Deputy Clark waited for paperwork, Ms. Farris stated that she did not want a lawyer anymore and that what she had wanted all along was to prove that she had not been drinking. Deputy Clark transported Ms. Farris back to the Ferry County Jail. Ms. Farris was found to have $4,956.00 on her person. ECF No. 30-5 at 2.

On August 19, 2018, Judge Thomas Brown made a preliminary finding of probable cause that the crime of physical control of a vehicle while under the influence was committed. *See* ECF No. 30-9.

On August 20, 2018, the State chose not to seek probable cause, indicating it was waiting on the blood screening toxicology results from the crime lab. ECF No. 30-10. Plaintiff was released from custody. *Id*.

In a criminal complaint dated September 5, 2018, Ms. Farris was charged with Driving Under the Influence – Refusal pursuant to RCW § 46.61.502. The charge was later amended to Physical Control-Refusal pursuant to RCW §

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 6**

46.61.504. ECF Nos. 30-13, 30-14. On November 6, 2018, the charge was dismissed without prejudice for the stated reason of "waiting on blood." ECF No. 30-15.

The toxicology report for Ms. Farris' blood analysis was dated March 27, 2019 and for alcohol and drugs disclosed results of "none detected." ECF No. 30-16. No further charges were made against Ms. Farris.

**Procedural History**

Plaintiff, through counsel, filed the Complaint in the present action on August 18, 2020. ECF No. 1. Plaintiff alleged violations of her Fourth Amendment rights, malicious prosecution, and *Monell* liability under 42 U.S.C. § 1983. Plaintiff later filed the Amended Complaint adding state law claims for: false arrest/false imprisonment against Deputy Clark and Ferry County, malicious prosecution against Deputy Clark and Ferry County, and negligence against all defendants. ECF No. 15. The Amended Complaint alleges Plaintiff had only slept a few hours in days when she pulled off the road to sleep. Plaintiff admits she woke from a "dead sleep in a state of confusion," and it took her "a few minutes to fully wake up" and "find[] her cognition." ECF No. 15 at 7. Plaintiff claims she became "very agitated," during her encounter with Deputy Clark because she "knew she was stone-cold sober," and just "wanted these people to leave her alone." ECF No. 15 at 9. She alleges that the search and seizure of her person, the search of her vehicle, and her prosecution were unlawful under federal and state law. It is alleged that during the canine search of the vehicle, Chief Culp caused Karma to give a false alert after cross contaminating the vehicle by touching his hand to the vehicle after having handled a dog scent toy. ECF No. 15 at 19. Plaintiff alleges the City is liable for creating a "practice . . . where officers intentionally cross-contaminate vehicles to influence a K-9's search." ECF No. 15 at 22. Plaintiff claims Ferry County is liable for failing to train Deputy Clark "regarding the

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 7**

indicia needed to establish reasonable suspicion to commence a DUI investigation and the proper administration of field sobriety tests."  ECF NO. 15 at 23.

Defendants now move, unopposed, for summary judgment on all of Plaintiff's claims.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch*., 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

A court cannot grant a defendant's motion for summary judgment solely because the plaintiff failed to respond. *Heinemann v. Satterberg*, 731 F.3d 914, 917-18 (9th Cir. 2013).

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 8**

## Discussion

### 1. 42 U.S.C. § 1983 Claims against Individual Defendants and Qualified Immunity

Plaintiff alleges Deputy Clark and Chief Culp violated her Fourth Amendment rights giving rise to liability under 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) a violation of a right secured by the Constitution, and laws of the United States and (2) the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual defendants named in a § 1983 action may raise the defense of qualified immunity. Qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 663 (2012)). This means that existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (quotation omitted).

Thus, the qualified immunity analysis involves two steps. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A district court must determine whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional rights and must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law without resolving the often more difficult question of whether the

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 9**

purported right exists as all. *Id.* at 236.

Plaintiff has the burden to overcome a defendant official's qualified immunity by showing that those rights were clearly established at the time of the conduct at issue. *Davis v. Scherer*, 468 U.S. 183, 196 (1984).

### a) Extension of the Investigative Stop

Plaintiff alleges Deputy Clark violated her Fourth Amendment right when she extended the scope of the investigatory stop from "mak[ing] sure Farris was okay" to performing a DUI investigation including field sobriety tests. ECF No. 15 at 17.

The Fourth Amendment is not a guarantee against all searches and seizures, but only against unreasonable searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 681 (1985) (emphasis in original). The reasonable duration of a traffic stop depends on the stop's "mission." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Officers need no additional reasonable suspicion to conduct tasks consistent with the stop's mission and address any related safety issues. *Id.* at 354–55; *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015). Police may extend a traffic stop if reasonable suspicion supports the extension. *Rodriguez*, 575 U.S. at 358; *Evans*, 786 F.3d at 786. "The reasonable-suspicion standard is not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc). It "falls considerably short of satisfying a preponderance of the evidence standard," *United States v. Arvizu*, 534 U.S. 266, 274 (2002), and is " 'obviously less' " than probable cause, *Navarette v. California*, 572 U.S. 393, 397 (2014) (citation omitted).

The initial investigative stop is not questioned by Plaintiff. While it is not unlawful to sleep in a car, it is unusual to sleep in the driver's seat slumped over the center console in a parked car on the side of a highway. Deputy Clark was aware that Ms. Farris had been in that condition long enough for a third party to contact authorities and report a female driver slumped over. Ms. Farris did not

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 10**

respond to Deputy Clark's initial knock on the window to wake her up. After waking and seeing Deputy Clark, Ms. Farris did not attempt to open her window or door. When asked to roll down her window, Ms. Farris did not comply, and she needed assistance opening the car door. Upon initial questioning, Deputy Clark observed that Ms. Farris did not know where she was and did not initially know where she was going. Her pupils were pinpoint, her speech was slow, and she was slow to respond to questions. Even though Deputy Clark did not observe Ms. Farris operate the vehicle or detect an odor of intoxicants (as noted in the Amended Complaint, ECF No. 15 at 17), the totality of the circumstances gave Deputy Clark reasonable suspicion of her physical control of a vehicle while impaired. Plaintiff claims these facts are explained as "symptoms expected from a person abruptly awakened," ECF No. 15 at 17; however, the question is not whether there may have been an innocent explanation for these facts, but rather whether taken together, they give rise to reasonable suspicion that Ms. Farris was in control of a vehicle while impaired. The Court finds reasonable suspicion supported the extension of the stop. Moreover, a reasonable officer in Deputy Clark's position could have believed there was reasonable suspicion to extend the stop. Accordingly, Deputy Clark has qualified immunity as to Plaintiff's claim for unlawful seizure based on the extension of the stop.

### b) The Arrest

The Amended Complaint alleges Deputy Clark violated the Fourth Amendment when she lacked probable cause to arrest. ECF No. 15 at 18.

It is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). An officer who makes an arrest without probable cause, however, may still be entitled to qualified immunity if he reasonably believed there to have been probable cause. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009).

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 11**

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Indeed, "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

In Washington it is a crime to be in physical control of a motor vehicle while under the influence of intoxicating liquor or drugs. Wash. Rev. Code § 46.61.504. Plaintiff cannot demonstrate that Deputy Clark lacked probable cause to arrest her where the unrebutted evidence shows that Deputy Clark's basis for arrest included: (1) the failure to follow directions/instructions; (2) a lack of awareness and confusion (3) slowed speech and responses; (4) bloodshot and droopy eyelids; (5) unstable balance; and (6) failed horizontal gaze nystagmus, "walk and turn" and "one leg stand" field sobriety tests. The ultimate dismissal of the charge against Plaintiff does not indicate that the arrest was made without probable cause. *See, Heath v. Cast*, 813 F.2d 254, 260 (9th Cir. 1987). Plaintiff has not come forward with any evidence consistent with the allegations in the Amended Complaint. Even if the Court were to conclude that Deputy Clark did not have probable cause, Deputy Clark would be protected by qualified immunity because a reasonable officer could have believed the arrest was lawful.

### c) Alleged Search of the Vehicle

The Amended Complaint claims Chief Culp and Deputy Clark unconstitutionally searched Plaintiff's vehicle following her arrest. ECF No. 15 at 19-20. The claim appears based on Plaintiff's claim that the arrest by Deputy Clark

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 12**

was unlawful. *Id*. As the Court has already determined that the arrest was supported by probable cause, this claim is meritless. Moreover, there is no evidence of record that the vehicle was ever searched either by Chief Culp or Deputy Clark. A canine sniff of the exterior of vehicle parked in a public location after an arrest is not a "search" protected under the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 410 (2005) ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."); *United States v. Lingenfelter*, 997 F.2d 632 (9th Cir. 1993) (dog sniff of commercial warehouse from public alley did not implicate Fourth Amendment).

### d)  Malicious Prosecution

Plaintiff alleges that Deputy Clark provided "false information" to the Ferry County Prosecutor's Office leading to her prosecution. ECF No. 15 at 21.

To prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed. *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002). Plaintiff's § 1983 malicious prosecution claim against Deputy Clark fails because Deputy Clark's actions were supported by probable cause.

### 2.  *Monell* Claims

Plaintiff's third claim for relief alleges the municipal defendants violated her constitutional rights by (1) the County's failure to train Deputy Clark; (2) the City's creation of a practice where officers intentionally and negligently "cross-contaminate vehicles to influence a K-9's search"; and (3) the City's creation of a

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 13**

"practice where officers . . . are encouraged to violate citizen's rights, and destroy their property, in the interest of personal gain and potential forfeiture opportunities." ECF No. 15 at 22-24.

The United States Supreme Court observed that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dep't. of Soc. Services*, 436 U.S. 658, 691 (1978). Thus, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Id*. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. *Id*. at 694; *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).

To establish municipal liability against the City and County, Plaintiff must allege she: (1) was deprived of a constitutional right; (2) the City and County each had a policy; (3) the policy amounted to deliberate indifference of her constitutional right; and (4) the policy was "the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

Absent a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). Importantly, municipal liability for an "improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id*.; *see also Meehan v. Cnty. of Los Angeles*, 856 F.2d 102,

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 14**

107 (9th Cir. 1988) (finding two incidents insufficient to establish custom).

A policy amounts to deliberate indifference where "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (*citing Oviatt*, 954 F.2d at 1477-78). To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson*, 290 F.3d at 1186.

### a)  Failure to train

Plaintiff contends that the traffic stop in this case evidences that the County failed to sufficiently train Deputy Clark and its deputies "regarding the indicia needed to establish reasonable suspicion to commence a DUI investigation and the proper administration of field sobriety tests." ECF No. 15 at 23.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *Id.* at 389. In addition, the inadequate training must have "actually caused" the deprivation of rights. *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1159-60 (9th Cir. 2012); *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). Ordinarily, a "pattern of similar constitutional violations by untrained employees" is necessary to demonstrate deliberate indifference for purposes of failure to train. *Connick*, 563 U.S. at 62. In rare instances, however, deliberate indifference can be inferred from

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 15**

a single incident when "unconstitutional consequences of failing to train" are "patently obvious." *Id*. at 64. While deliberate indifference can be inferred from a single incident, "an inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022). "Otherwise, a plaintiff could effectively shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality." *Id*. at 875; *see Merritt*, 875 F.2d at 770 ("Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County.").

Here, the County cannot be held liable where Plaintiff has failed to demonstrate she was deprived of a constitutional right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (holding that a plaintiff show direct causal link between municipal action and deprivation of federal rights in order to hold municipality liable under § 1983). Moreover, even if Plaintiff had established a genuine dispute of material fact so as to preclude summary judgment on her claims against Deputy Clark, Plaintiff has made no attempt to adduce any evidence that would support a claim for *Monell* liability. Plaintiff's sole submission, the Amended Complaint, alleges in only the most conclusory fashion that the "County failed to implement a training program sufficient to address the identified deficiencies." ECF No. 15 at 23. Plaintiff may not overcome summary judgment by relying upon allegations in her own pleading. Plaintiff has not alleged any pattern of Fourth Amendment violations or identified any specific deficiency in the County's training program. Plaintiff has no proof that any deficiency is the result of deliberate indifference. Accordingly, summary judgment is granted in the County's favor on Plaintiff's *Monell* claim against the County.

### b)  *Practice of cross-contamination and violation of rights*

Plaintiff asserts that Chief Culp, as a City policymaker, (1) "created a practice for Republic's Police Department where officers intentionally cross-contaminate vehicles to influence a K-9's search"; (2) "created a practice where

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 16**

Republic's Police Department negligently cross-contaminate to influence a K-9's search"; and (3) "created a practice where officers of the department are encouraged to violate a citizen's rights, and destroy their property, in the interest of personal gain and potential forfeiture opportunities." ECF No. 15 at 22. Here, there can be no liability under *Monell* as there is no evidence that the City has a policy or custom that allowed for the existence of unconstitutional conduct by its officers or that that the City has a policy or custom that actually caused the alleged constitutional deprivation. Assuming for the sake of argument that cross-contamination occurred during the deployment of the canine, there is no evidence this was a practice of sufficient duration, frequency and consistency to suggest it was a policy. The City is entitled to summary judgment on Plaintiff's *Monell* claims.

### 3.  State Law Claims

Although the federal claims have been dismissed, the Court retains authority to exercise supplemental jurisdiction over the state law claims where, as here, they derive from "derive from a common nucleus of operative fact" and are "such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quotation omitted). The outcome of Plaintiff's state law claims is plain.

#### a)  False Arrest/False Imprisonment/Malicious Prosecution

First, Plaintiff seeks to hold Deputy Clark and the County vicariously liable for false arrest, false imprisonment, and malicious prosecution. ECF No. 15 at 24-26. Though these are distinct claims, the existence of probable cause is a complete defense to all of them. *Hanson v. City of Snohomish*, 121 Wash.2d 552, 563–64 (1993); *Fondren v. Klickitat County*, 79 Wash. App. 850, 856 (1995). Because the Court has already found that Deputy Clark arrested Plaintiff and provided information to the prosecutor on the basis of probable cause, Plaintiff fails to state a claim for false arrest, false imprisonment, or malicious prosecution matter of law.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 17**

### b) Negligence

Plaintiff also alleges negligence claims against all defendants. ECF No. 15 at 27. To prevail on a negligence claim, a plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 879 (2021). "At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others." *Beltran-Serrano v. City of Tacoma*, 193 Wash. 2d 537, 550 (2019). "This duty applies in the context of law enforcement and encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." *Id*.

Plaintiff alleges three distinct negligence claims. First, as to Deputy Clark, Plaintiff alleges she was negligent in conducting field sobriety tests, failing to provide documentation regarding Plaintiff's drivers' license, and documenting that Plaintiff had refused to take a BAC test. To the extent Plaintiff bases her negligence claim on her arrest, the claim cannot survive summary judgment because the arrest was based on probable cause. *Scotti v. City of Phoenix*, 609 F. App'x 386, 389 (9th Cir. 2015) (independent probable cause negates state law negligence claims). To the extent Plaintiff attempts to state a claim for negligence based on Deputy Clark's investigation, the claim fails as a matter of law because Washington law immunizes officers for actions taken reasonably within the scope and course of their employment, including investigatory actions that resulted in criminal charges. *Staats v. Brown*, 139 Wash. 2d 757, 778 (2000). Plaintiff has not alleged that Deputy Clark's conduct falls outside the course of her employment, nor demonstrated that she acted unreasonably. Plaintiff does not have a viable claim for negligence based on an allegedly faulty investigation.

Second, Plaintiff alleges Chief Culp was negligent in handling his canine while performing the vehicle search causing a false alert. ECF No. 15 at 29. Plaintiff has failed to articulate what duty Chief Culp owed to her, how it was

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 18**

breached, or what injury resulted as a result of the alleged breach. Because Plaintiff cannot demonstrate that Chief Culp acted negligently, any assertion of vicarious liability against the City necessarily fails too.

Finally, Plaintiff contends Ferry County negligently failed to train its deputies. ECF No. 15 at 30. This claim fails because a claim of negligent training is only actionable if the employee is acting outside the scope of employment. *Anderson v. Soap Lake School Dist.*, 191 Wash. 2d 343, 361 (2018). Plaintiff makes no such claims.

Defendants are entitled to summary judgment on all state law claims.

**Accordingly**, **IT IS HEREBY ORDERED**:

1.      Defendant Loren Culp and Defendant Republic Police Department's Motion for Summary Judgment, **ECF No. 35**, is **GRANTED**.

2.      Defendant Christine Clark and Ferry County Sheriff's Motion for Summary Judgment, **ECF No. 28**, is **GRANTED**.

The Clerk of the Court is directed to enter this Order, **ENTER JUDGMENT** in favor Defendants and against Plaintiff, provide copies to counsel and the pro se Plaintiff, and **CLOSE THE FILE**.

**DATED** this 9th day of December, 2022.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT # 19**